787 F.2d 588
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES EDWARD CLANTON, Petitioner-Appellant,
v.
MICHAEL DUTTON, WARDEN, TENNESSEE STATE
PENITENTIARY,Respondent-Appellee.
 84-5679
 United States Court of Appeals, Sixth Circuit.
 3/20/86
 
 AFFIRMED
 E.D.Tenn.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, NORTHERN DIVISION
 BEFORE: KRUPANSKY and GUY, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant James Clanton ('appellant'), appealed the district court's order denying his petition for habeas corpus pursuant to 28 U.S.C. Sec. 2254. The petition charged two assignments of error, alleging that the life sentence imposed upon him for the offense of grand larceny was disproportionate to the offense committed thereby violating the Eighth Amendment, and that the evidence to support that conviction was insufficient thereby violating the Fourteenth Amendment. Appellant's subsequent motion for new trial or for reconsideration was also denied by the district court.
 
 
 2
 On April 25, 1980, a Knox County Criminal Court jury convicted the appellant of grand larceny and for violating Tennessee's Habitual Criminal Act, T.C.A. Sec. 39-1-801 et seq., (the 'Act').
 
 
 3
 The court imposed a sentence of five years on the grand larceny conviction, which was enhanced to life imprisonment as a result of appellant's conviction as an habitual criminal.
 
 
 4
 The relevant facts are undisputed. Prior to April 10, 1978, appellant and his alleged wife, Judy Caldwell,[1] had been employed by Henry Heptinstall ('Heptinstall') at his residence. Heptinstall operated an oxygen supply business from his home. Appellant worked as a truck mechanic and handyman, and Caldwell worked as a housekeeper.
 
 
 5
 Before Heptinstall and his daughter left their home on the morning of April 10, 1978, he gave the keys to his Ford Torino and twenty dollars to appellant, instructing him to replace the worn shock absorbers and have the tires rotated on the vehicle. Appellant and Caldwell were the only persons who had access to the house. When Heptinstall and his daughter returned to their house at approximately 11:00-11:30 a.m., they found appellant, Caldwell and the Torino gone. A search of the house disclosed that numerous guns, jewelry, tools, sheets, pillowcases, a quilt and a coin box were missing. These items exceeded $200.00 in value. Heptinstall proceeded to appellant's apartment that afternoon and found it had been vacated. Neither appellant nor Caldwell ever returned to the Heptinstall residence.
 
 
 6
 Betty Cagley, owner of a beauty shop across from Heptinstall's house had observed appellant working on the Torino on the morning here in issue. She also observed a woman exit the house carrying a sheet which appeared to be 'weighted', which was given to the appellant.
 
 
 7
 Appellant was arrested in Knoxville approximately one year later. He testified and admitted that he had been employed by Heptinstall and that he had gone to work at the Heptinstall residence along with Caldwell at approximately 8:00 a.m. on the morning in question. Appellant stated that he had been employed by the Heptinstall's approximately two to three months and that they had treated him very well. He confirmed Heptinstall's testimony concerning the tasks that he had been given and that Heptinstall and his daughter had left the house at approximately 8:30 a.m. on the morning of April 10, 1978. He stated further that he worked on the Torino before he went to the parts store to purchase the shock absorbers. When he returned approximately an hour to an hour and fifteen minutes later, he found a note from Caldwell stating that she had gone to Texas and had taken some of the Heptinstall property including the Torino. Appellant stated that he had fled the secene because, at the time, he was a parole violator. The stolen property was never recovered. Id.
 
 
 8
 Appellant had been previously convicted of eight felonies including three convictions for assault with the intent to commit involuntary manslaughter, three convictions for third degree burglary, one conviction for shooting into an occupied motor vehicle, and one conviction for obtaining goods not exceeding $100.00 in value by the unlawful use of a credit card.
 
 
 9
 Appellant's charge that his conviction under the Act constituted an infringement of his Eighth Amendment protection against cruel and unusual punishment is not persuasive.[2]
 
 
 10
 Initially, it must be noted that appellant improperly argued that the life sentence imposed was disproportionate to his most recent felony conviction of grand larceny. As the Supreme Court observed in Rummel v. Estell, 445 U.S. 263, 284, 100 S. Ct. 1133, 1144-45, 63 L.Ed.2d 382 (1980):
 
 
 11
 The purpose of a recidivist statute such as that involved here is not to simplify the task of prosecutors, judges, or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. (Emphasis added).
 
 
 12
 Accordingly, the inquiry should balance the life sentence imposed pursuant to the Act against the aggregate of appellants' felony convictions.
 
 
 13
 In Solem v. Helm, 463 U.S. 277, 103 S. Ct. 3001, 77 L.Ed.2d 637 (1983), the Court considered whether the Eighth Amendment proscribed a life sentence without possibility of parole for a seventh nonviolent crime under the South Dakota recidivist statute. 463 U.S. at 279, 103 S.Ct. at 3004. There, defendant had been previously convicted of three third degree burglaries, in addition to being convicted of obtaining money under false pretenses, grand larceny, and driving while intoxicated on separate occasions. Id. The recidivist statute was not invoked until defendant's seventh felony conviction for uttering a no account check. None of his felonies were violent crimes or crimes against a person.
 
 
 14
 The Court reasoned that the Eighth Amendment prohibits a criminal sentence which is disproportionate to the crime committed. Helm 463 U.S. at 290, 103 S. Ct. at 3009. It also articulated the guidelines to review asserted Eighth Amendment sentencing infringements arising as a result of receidivist legislative enactments by stating that: 'The reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.' Id. (Footnote omitted). The Court continued, '[w]hen sentences are reviewed under the Eighth Amendment, courts should be guided by objective factors that our cases have recognized.' Id., 103 S. Ct. at 3010 (footnote omitted).
 
 
 15
 This 'objective factor proportionality test' directs the reviewing court to (1) examine the seriousness of the felonies committed; (2) compare the sentence imposed pursuant to the recidivist statute to similar sentences imposed for other crimes in the same jurisdiction; and (3) compare the sentence imposed pursuant to the recidivist statute to sentences imposed in other jurisdictions pursuant to their recidivist statute. 463 U.S. at 290-92, 103 S. Ct. at 3010-11.
 
 
 16
 Applying the enunciated criteria to the case at bar, it is readily apparent that appellant is the prototypical criminal which the Tennessee state legislature sought to isolate from society by promulgating T.C.A. Sec. 39-1-801 et seq. Mindful that four of appellant's nine felonies were for violent crimes against the person, and recognizing that appellant will be eligible for parole in 30 years, the life sentence imposed does not constitute cruel and unusual punishment, nor an infringement of his Eighth Amendment rights.
 
 
 17
 Appellant's contention that the evidence adduced at trial was insufficient to sustain his conviction of grand larceny is wholly specious and equally without merit. In Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1970), the Supreme Court held that a federal habeas corpus court reviewing the sufficiency of the evidence to support a criminal conviction must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original). Pursuant to Tennessee law, grand larceny is the felonious taking and carrying away personal goods of another over the value of $200. T.C.A. Secs. 39-3-1101 and 39-3-1103.
 
 
 18
 The facts surrounding the theft in this case were undisputed. Each of the elements of grand larceny were undeniably satisfied--appellants' defense being that he did not commit the crime but rather it was Caldwell. As the district court aptly concluded in its opinion, viewing the evidence adduced at trial in the light most favorable to the prosecution, a rational trier of fact could reasonably have found that appellant was indeed the guilty party.
 
 
 19
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Appellant testified that although he had introduced Ms. Caldwell as his wife, she was actually his girlfriend with whom he was living
 
 
 [2]
 T.C.A. Sec. 39-1-801 provides:
 39-1-801. Persons defined as habitual criminals.--Any person who has either been three (3) times convicted within this state of felonies, not less than two (2) of which are among those specified in Secs. 39-2-103, 39-605 [repealed], 39-2-111, 39-2-112, 39-2-640, 39-6-417(a)(1)(A), 40-20-112 or were for a crime punishable by death under existing law, but for which the death penalty was not inflicted, or who has been three (3) times convicted under the laws or any other state, government or country of crimes, not less than two (2) of which, if they had been comitted in this state, would have been among those specified in said Secs. 39-2-103, 39-605 [repealed], 39-2-111, 39-2-112, 39-2-640, 39-6-417(a)(1)(A), 40-20-112 or 39-2-111 would have been punishable by death under existing laws, but for which the death penalty was not inflicted, shall be considered, for the purposes of this part, and is declared to be an habitual criminal, provided that petit larceny shall not be counted as one of such three (3) convictions, but is expressly excluded; and provided, further, that each of such three (3) convictions shall be for separate offense, committed at different times, and on separate occasions.
 T.C.A. Sec. 40-28-116(b)(1) provides:
 40-28-116. Power to parole.--
 (b)(1) Any person having been convicted and sentenced as an habitual criminal under Sec. 39-1-806, may become eligible for parole provided such person shall have been confined or served a term in the state penitentiary of not less than thirty (30) full calendar years. The granting of such parole shall be within the discretion of the board.